## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC., ) <br> 2020 Pennsylvania Avenue, NW, #163, ) <br> Washington, DC 20006 ) <br> ) <br>      Plaintiff, ) <br> ) <br>      v. ) <br> ) <br> U.S. DEPARTMENT OF JUSTICE, ) <br> 950 Pennsylvania Avenue, NW, ) <br> Washington, DC 20530, ) <br> ) <br>      and ) <br> ) <br> U.S. DEPARTMENT OF HOMELAND ) <br> SECURITY, ) <br> 245 Murray Drive, SW, ) <br> Washington, DC 20528 ) <br> ) <br>      Defendants. ) | Civil Action No.  18-445 |

## **COMPLAINT**

1.　　On December 28, 2017, President Trump said: "I have absolute right to do what I want to do with the Justice Department."[1]  This pronouncement followed multiple already-public instances of the President and his White House staff intervening with the Department of Justice ("DOJ") about specific law enforcement matters.  The President has even instructed DOJ to investigate his opponent in the 2016 campaign.

---

[1] *Excerpts from Trump's Interview with The Times*, N.Y. TIMES (Dec. 28, 2017), https://www.nytimes.com/ 2017/12/28/us/politics/ trump-interview-excerpts html.

2.      For four decades, Democratic and Republican administrations alike have observed White House policies that restrict communications between the White House and federal investigative and law enforcement functions concerning specific-party matters.[2]  These policies are designed to ensure compliance with the President's proper constitutional role and to avoid placing political pressure, or even the appearance of political pressure, on the impartiality of enforcement processes.  A constitutional democracy cannot survive when those in power use law enforcement as a tool to reward their allies or target their critics and the political opposition.

3.      In January 2017, the Trump Administration established a limited policy governing contacts between the White House and DOJ.[3]  The Justice Department has a mirror contacts policy towards the White House, restricting DOJ personnel who can speak with White House personnel on specific matters.  The DOJ policy dates from 2009 and is still in effect.[4]

4.      The Trump Administration's interventions with DOJ about specific investigative and enforcement matters conflict with the White House's own written policy.  As set forth below, certain instances are already known to the public.  But there may be other, as yet unknown instances where the President or his White House staff contacted the Justice Department about specific-party enforcement matters.  Nor do we know how the Justice Department has responded to clear White House interference, for example in the case of the President's requests to prosecute his former electoral opponent.

---

[2] Memorandum, United to Protect Democracy, "Subject: White House Communications with the DOJ and FBI," (Mar. 8, 2017), *available at* https://protectdemocracy.org/agencycontacts/.
[3] Memorandum, Donald F. McGahn II, Counsel to the President, to All White House Staff, "Subject: Communications Restrictions with Personnel at the Department of Justice," (Jan. 27, 2017), *available at* https://www.politico.com/f/?id=0000015a-dde8-d23c-a7ff-dfef4d530000 (hereinafter, "McGahn Memo").
[4] *See* Freedom of Information Act Response on Behalf of the Offices of the Attorney General and Deputy Attorney General from the U.S. Department of Justice Office of Information Policy to Protect Democracy (May 15, 2017), *available at* https://protectdemocracy.org/wp-content/uploads/2018/01/0085-All.pdf (attaching the 2009 contacts policy known as the Holder Memo).

5.      White House interventions in specific federal law enforcement matters raise substantial constitutional issues and threaten the impartial rule of law on which our democracy depends.  That is all the more so when these are done in secret. The citizens of our democracy deserve to learn the extent to which the White House is communicating with federal law enforcement agencies about specific matters, and whether those communications are influencing the decisions of our federal government enforcement personnel in the course of carrying out their duties.

6.      In 2017, Plaintiff, The Protect Democracy Project, Inc. ("Protect Democracy"), submitted requests under the Freedom of Information Act ("FOIA") to obtain information about the White House's communications on specific matters with DOJ and the U.S. Department of Homeland Security ("DHS").  Plaintiff also submitted FOIA requests to DOJ for records about White House pressure to investigate Hillary Clinton.  Both agencies have failed to respond to Plaintiff's requests within the statutory deadline.  Plaintiff brings this action against Defendants DOJ and DHS to compel compliance with FOIA, 5 U.S.C. § 552.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.      Plaintiff The Protect Democracy Project, Inc. is an organization with 501(c)(3) tax-exempt status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more autocratic form of government by preventing those

in power from depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of government operations and activities by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the public access to documents obtained via FOIA by publishing them on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

10.     Defendant U.S. Department of Justice is an agency of the executive branch of the federal government of the United States.  Defendant is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.  Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

11.     Defendant U.S. Department of Homeland Security is an agency of the executive branch of the federal government of the United States.  Defendant is headquartered at 245 Murray Drive, SW, Washington, DC 20528.  Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

## STATEMENT OF FACTS

*The Policies Limiting White House Contacts on Specific Enforcement Matters Protect the Independence of Law Enforcement*

12.     American democracy is based on the rule of law, whereby the administration of justice is carried out free from political influence, or even the appearance of political interference.  Fundamental to our democratic system of government is the principle that those in office should not wield the power of the state to benefit their political allies and punish political opponents or others who are not in favor.

13.     The American Constitution grounds these principles in several places.  It requires the President to "take care that the Laws be faithfully executed."[5]  The Fifth Amendment's Due Process Clause requires the government to follow fair and neutral procedures before denying people important interests, thus limiting political influence over objective enforcement processes. The Equal Protection Clause, which precludes the federal government from denying to any person equal treatment under the laws, likewise prohibits the White House from interfering with the prosecution of a disfavored person or group, or protection of a favored ones from prosecution.  And the First Amendment prohibits retaliation based on speech or political activity.

14.     In furtherance of these foundational constitutional principles, since the Nixon Administration, Republican and Democratic administrations alike have maintained policies limiting contacts between the White House and law enforcement on matters involving specific parties.  In particular, administrations of both parties have enacted written White House contacts policies to protect the impartiality of law enforcement from political interference.  The White House contacts policies, with few exceptions, prohibit communications between White House staff and federal agencies about enforcement actions involving specific parties, including investigations and prosecutions.  The White House can communicate with law enforcement agencies on broad policy matters and generally applicable enforcement priorities; but with limited exceptions should not intervene in the handling of specific enforcement matters.

15.     The Trump White House issued its White House contacts policy on January 27, 2017.  White House Counsel Donald F. McGahn wrote a memorandum to all White House staff, entitled "Communications Restrictions with Personnel at the Department of Justice," emphasizing that "*these rules <u>must</u> be strictly followed*" in order to avoid "*the fact or appearance*

---

[5] U.S. Const. art. II, § 3.

*of improper political influence.*"[6]  This policy states that only the President, Vice President, Counsel to the President, and Deputy Counsel, or a designee, may communicate with DOJ "about contemplated or pending investigations or enforcement actions."[7]

16.     As the current policy states, "[t]hese rules recognize the President's constitutional obligation to take care that the laws of the United States are faithfully executed, while ensuring maximum public confidence that those laws are administered and applied impartially in individual investigations or cases."[8]

17.     To plaintiff's knowledge, the White House has not revoked, revised, or replaced its contacts policy.

18.     DOJ also has a current policy governing contacts with the White House, as it has since the Nixon Administration, in "order to promote the rule of law" which "depends upon the evenhanded administration of justice."  In response to a separate FOIA request of Protect Democracy,[9] DOJ disclosed that its current contacts policy[10] has been in force since 2009.[11] Then-Attorney General Eric Holder issued the currently operative guidelines in a memorandum entitled "Communications with the White House and Congress," which restrict DOJ communications with the White House on pending or contemplated civil or civil investigations.

---

[6] McGahn Memo at 1 (emphasis in original).
[7] *Id.*
[8] *Id.* at 2.
[9] *See* Freedom of Information Act Request from Protect Democracy to the U.S. Department of Justice Office of Information Policy (Apr. 18, 2017), *available at* https://protectdemocracy.org/wp-content/uploads/2018/01/0085-All.pdf.
[10] Memorandum, Eric Holder, Attorney General, to Heads of Department Components and All United States Attorneys, "Subject: Communications with the White House and Congress," U.S. Department of Justice (May 11, 2009), *available at* https://protectdemocracy.org/wp-content/uploads/2018/01/0085-All.pdf ("Holder Memo").
[11] *See* Freedom of Information Act Response on Behalf of the Offices of the Attorney General and Deputy Attorney General from the U.S. Department of Justice Office of Information Policy to Protect Democracy (May 15, 2017), *available at* https://protectdemocracy.org/wp-content/uploads/2018/01/0085-All.pdf (attaching the Holder Memo).

19.     To plaintiff's knowledge, DOJ has not revoked, revised, or replaced its contacts policy.

20.     DHS's contacts policy is written as a Management Directive, applicable across the department and its components, to likewise restrict information shared between DHS and the White House on investigations and enforcement actions to only a handful of the most senior officials.[12]

21.     To plaintiff's knowledge, DHS has not revoked, revised, or replaced its contacts policy.

22.     However, there are public reports that members of the Trump administration, and even the President himself, have sought to intervene in specific law enforcement matters.

23.     For example: White House policy aide Stephen Miller reportedly called a U.S. Attorney at home to dictate DOJ's defense in pending litigation against the first travel ban.[13] The then-White House Chief of Staff Reince Priebus allegedly contacted the FBI about the ongoing investigation into communications between Russian intelligence and associates of President Trump.[14]  President Trump's antipathy for CNN may have played a role in DOJ's antitrust enforcement suit to block a merger between CNN's owner, Time Warner, and AT&T.[15] Last month, current White House Chief of Staff John Kelly reportedly called officials at DOJ

---

[12] *See* Management Directives System, MD Number 0430, "Communications with the White House Regarding Open Investigations, Adjudications, or Civil and Criminal Enforcement Actions," U.S. Department of Homeland Security (Mar. 1, 2003), *available at* https://www.dhs.gov/sites/default/files/publications/ mgmt_directive_0430_communications_white_house_regarding_open_investigations_adjudications_civil_criminal_ enforcement_actions.pdf.

[13] *See* Harry Siegel, *Stephen Miller Called Brooklyn U.S. Attorney at Home and Told Him How to Defend Travel Ban in Court*, N.Y. DAILY NEWS (Feb. 18, 2017), http://www.nydailynews.com/opinion/stephen-miller-called-u-s-attorney-travel-ban-defense-article-1.2975873.

[14] *See* Isaac Arnsdorf, *Priebus Request to FBI Violated Norms, If Not Rules*, POLITICO (Feb. 24, 2017), http://www.politico.com/story/2017/02/reince-priebus-fbi-contact-trump-235351.

[15] *See* Alicia Cohn, *DOJ: Trump's Dislike of CNN Did Not Bias AT&T-Time Warner Merger,* THE HILL (Feb. 17, 2018), http://thehill.com/policy/technology/374350-doj-trumps-dislike-of-cnn-didnt-bias-att-time-warner-merger.

about a criminal and counterintelligence investigation that includes inquiry into the President and his White House, conveying disapproval of DOJ's position against disclosure of the Nunes memo.[16]

24.    President Trump himself sought to help his political ally and former national security advisor, Michael T. Flynn, whom he termed a "good guy," by asking then-FBI Director James B. Comey to end the ongoing federal investigation into Mr. Flynn.[17]

25.    President Trump has also publically called on DOJ to prosecute his defeated opponent, Secretary Clinton.  On a radio show on November 2, 2017, President Trump said, "I look at what's happening with the Justice Department, why aren't they going after Hillary Clinton with her emails and with her dossier, and the kind of money [...] I'll be honest, I'm very unhappy with it."[18]  On November 3, 2017, President Trump tweeted: "Pocahontas just stated that the Democrats, lead [sic] by the legendary Crooked Hillary Clinton, rigged the Primaries! Lets (sic) go FBI & Justice Dept."[19]  President Trump has sent many other similar tweets since the election.[20]

---

[16] *See* Allegra Kirkland, *Kelly May Have Violated White House's Own Policy on DOJ Contact*, TALKING POINTS MEMO (Jan. 30, 2018), https://talkingpointsmemo.com/muckraker/john-kelly-contact-justice-department-nunes-memo-violates-spirit-contact-policy.

[17] Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. TIMES (May 16, 2017), *available at* https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html.

[18] Larry O'Connor, *Listen: President Donald Trump to Larry O'Connor: I'm Very Unhappy the Justice Department Isn't Going After Hillary Clinton*, W.M.A.L. (Nov. 3, 2017), www.wmal.com/2017/11/03/listen-president-donald-trump-to-larry-oconnor-im-very-unhappy-the-justice-department-isnt-going-after-hillary-clinton.

[19] Donald J. Trump (@realDonaldTrump), TWITTER (Nov 3 2017, 6:55 AM), https://twitter.com/realDonaldTrump/status/926417546038923264.

[20] *See, e.g.,* Donald J. Trump (@realDonaldTrump), TWITTER (July 25 2017, 3:12 AM), https://twitter.com/realDonaldTrump /status/889790429398528000 ("Attorney General Jeff Sessions has taken a VERY weak position on Hillary Clinton crimes (where are E-mails & DNC server) & Intel leakers!"); Donald J. Trump (@realDonaldTrump), TWITTER (Oct. 18 2017, 3:21 AM), https://twitter.com/realDonaldTrump/status/920595564064100352 ("Wow, FBI confirms report that James Comey drafted letter exonerating Crooked Hillary Clinton long before investigation was complete. Many…"); Donald J. Trump (@realDonaldTrump), TWITTER (Oct. 18 2017, 3:27 AM), https://twitter.com/realDonaldTrump/status/920597192666157057 ("...people not interviewed, including Clinton herself. Comey stated under oath that he didn't do this-obviously a fix? Where is Justice Dept?")

26.     Plaintiff is not affiliated with and has not supported any party or political

candidate.  Plaintiff's interest in communications between the White House and Department of

Justice concerning an investigation of former Secretary Clinton is solely based on our

organizational interest in upholding the rule of law and the independence of law enforcement

functions.  Simply put, a president ordering the investigation of his former opponent is an affront

to a constitutional democracy.

27.     Transparency is required to identify other instances of improper White House

interference with federal law enforcement, which may be rife among a White House led by a

President who publicly undermines the contacts policy and the democratic norms insulating the

independence of federal law enforcement.  The public has an important interest in learning

whether the President, and his Administration, have politically interfered with the impartiality of

our nation's foremost law enforcement roles.  Public confidence in the integrity of law

enforcement requires it.

*Plaintiff's FOIA to DOJ and its components, OAG, ODAG, EOUSA, ENRD, and FBI*

28.     On May 19, 2017, Plaintiff sent a FOIA request by fax to DOJ and its

components, including the Office of the Attorney General (OAG), Office of the Deputy Attorney

General (ODAG), Environmental and Natural Resources Division (ENRD), Executive Office for

U.S. Attorneys (EOUSA), and Federal Bureau of Investigation (FBI) seeking the following

records:

> Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, The Protect
> Democracy Project hereby requests that your office produce within 20 business
> days the following records (see below for clarity on the types of records sought):
>
> 1)     Any and all records, including but not limited to emails, phone records,
>        calendar entries, meeting notes, and other communications related to
>        contacts between White House staff, including email domain addresses

ending in "eop.gov," as well as private email addresses, and Department of Justice (DOJ) employees regarding:

a)      Any pending or contemplated investigation or case, of either a civil or criminal nature;

b)      Policies governing communications between the White House and DOJ, including but not limited to:

      i.      the Memorandum issued by Counsel to the President Donald F. McGahn dated January 27, 2017, titled *Communications Restrictions with Personnel at the Department of Justice;*

      ii.     the Memorandum issued by Attorney General Eric Holder dated May 11, 2009, titled *Communications with the White House and Congress*; or

      iii.    the Memorandum issued by Attorney General Mukasey dated December 19, 2007, titled *Communications with the White House.*

2)      Any and all records of DOJ employees regarding policies, procedures, memoranda, guidance, best practices, directives, trainings, compliance efforts, firewalls, reminders, or other information related to communications between the White House and DOJ, including but not limited to the Memorandum issued by Attorney General Eric Holder dated May 11, 2009, titled *Communications with the White House.*

3)      Any and all records of Department of Justice employees regarding possible or actual violations, breaches, abuses, findings, or reports, related to communications between the White House and DOJ, including but not limited to the Memorandum issued by Attorney General Eric Holder dated May 11, 2009, titled *Communications with the White House.*

4)      In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request.  If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The timeframe for this request is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

*See* Exhibit A (FOIA Request No. 1 to DOJ).

29.　　Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

30.　　On June 19, 2017, DOJ's Office of Information Policy (OIP), responding on behalf of OAG and ODAG, acknowledged receipt of Plaintiff's FOIA request on May 19, 2017. *See* Exhibit B (DOJ Acknowledgement of FOIA Request No. 1).  Defendant stated it had not yet made a decision on fee waiver.

31.　　On August 11, 2017, DOJ's ENRD wrote to Plaintiff to acknowledge that the request was received on May 23, 2017.  *See* Exhibit C (ENRD Acknowledgment).  ENRD stated that its response would likely require consultation with another agency, thus falling under the "unusual circumstances" regulation.  ENRD did "not have an estimated completion date for [the] request."  *Id.*  Also, ENRD did not make a decision on the fee waiver request, which it was in the process of evaluating.  *Id.*

32.　　On June 7, 2017, DOJ's EOUSA acknowledged that it received Plaintiff's FOIA request on May 22, 2017.  *See* Exhibit D (EOUSA Acknowledgement).  EOUSA assigned the request to the complex track, which "necessarily take(s) longer," but did not identify an estimated response date.  *Id.*  It did not respond to Plaintiff's fee waiver request.

33.　　FBI acknowledged receiving the request on May 31, 2017.  *See* Exhibit E (FBI Acknowledgement).

34.　　In a letter dated October 3, 2017, FBI wrote that it determined that Plaintiff was an educational institution and subject to duplication fees.  *See* Exhibit F (FBI Fee Letter).

35.     FBI then proceeded to close Plaintiff's request with the only explanation that "the information requested would be under the purview of another agency," without further explanation.  *See* Exhibit G (FBI Closure).

36.     Plaintiff filed an administrative appeal, *see* Exhibit H (Appeal to FBI), which FBI denied, stating that "if you are dissatisfied . . . the FOIA permits you to file a lawsuit in federal district court."  *See* Exhibit I (FBI Appeal Denial).

37.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).  Even if DOJ or its components properly invoked a 10-day extension, that date – at the latest, July 19, 2017 – has long since passed.

38.     To date, OAG, ODAG, EOUSA, and ENRD have failed to make the required determination and notifications.  Nor have those components made a determination regarding Plaintiff's request for a fee waiver.

39.     Also, FBI has failed to process Plaintiff's valid FOIA request, and Plaintiff has exhausted its administrative appeals.

*Plaintiff's FOIA to DHS and its components, CBP, ICE, TSA, USCIS, and FEMA*

40.     On May 31, 2017, Plaintiff sent four FOIA requests to DHS and three of its components, Customs and Border Protection (CPB), Immigration and Customs Enforcement (ICE), and Transportation Security Administration (TSA), identical except in the name of the entity and certain employees at each entity, seeking the following records:

1)     Any and all records created or transmitted by or between White House staff, including but not limited to their email addresses ending in "who.eop.gov," including but not limited to Jared Kushner, Stephen (Steve) Bannon, Reince Priebus, Sean Cairncross, Justin Clark, George Sifakis, Bill Stepien, Ivanka Trump, Frank Wuco, Thomas "Tom" Bossert, John Zadrozny, Zina Bash, and Stephen Miller, and [DHS/TSA/CBP/ICE] employees including, but not limited to [naming employees] regarding:

    a)     any and all processes or protocols or procedural requirements for initiating, continuing, or terminating compliance matters, investigations and/or enforcement actions of either a civil, administrative, or criminal nature involving any specific party;

    b)     initiating, continuing, or terminating any specific compliance matter, investigation and/or enforcement action of either a civil, administrative, or criminal nature involving any party;

    c)     any and all processes or protocols or procedural requirements for initiating, awarding, rejecting, or terminating an acquisition, procurement contract, grant, award, or subaward, for any specific party;

    d)     initiating, awarding, rejecting, or terminating an acquisition, procurement contract, grant, award, or subaward, for any party;

    e)     any and all processes or protocols or procedural requirements for considering a regulatory approval, regulatory waiver, or administrative or benefits adjudication for any specific party;

    f)     any regulatory approval, regulatory waiver, or administrative or benefits adjudication for a specific party.

2)     In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The timeframe for this request is November 9, 2016 through the date that searches are conducted for records responsive to this FOIA request.

*See* Exhibit J (FOIA Request to DHS).

41.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

42.     On June 8, 2017, DHS acknowledged receipt of the Plaintiff's request on May 31, 2017 in a letter sent via email.  *See* Exhibit K (DHS Acknowledgement).  DHS invoked a 10-day extension and conditionally granted Plaintiff's request of fee waiver.  *Id.*

43.     DHS transferred portions of the request to several of its components, including TSA, CBP, and ICE, where Plaintiff had also sent direct its FOIA request directly, as well as the Federal Emergency Management Agency (FEMA) and U.S. Citizenship & Immigration Services (USCIS).  *See* Exhibit L (DHS Transfer).

*CBP*

44.     On October 12, 2017, CBP emailed Plaintiff to indicate the tracking number, but CBP did not provide an estimate for processing the FOIA request, or any response on Plaintiff's request for a fee waiver.  Exhibit M (CBP Acknowledgment).

*ICE*

45.     On October 17, 2017, ICE responded by email to an inquiry from Plaintiff regarding the submitted FOIA, but ICE did not provide an estimate for processing the FOIA request, or any response on Plaintiff's request for a fee waiver.  Exhibit N (ICE Acknowledgment).

*TSA*

46.     On June 26, TSA corresponded with Plaintiff to acknowledge its FOIA request was received on June 26, 2017.  *See* Exhibit O (TSA Acknowledgment).  TSA indicated it was "reviewing your request" for a fee waiver.  Also, it invoked the 10-day extension for unusual circumstances.  *Id.*

47.     On October 12, 2017, TSA emailed Plaintiff to estimate the processing time would take an additional 45-60 days.  *See* Exhibit P (TSA Update).  Even given its longest estimate, TSA has surpassed its time period.

48.     Neither USCIS nor FEMA have responded to Plaintiff to provide an estimate of its processing or a response to Plaintiff's fee waiver request.

49.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).  DHS's components' failure to acknowledge the receipt of the request makes it difficult to know the exact date they received it.  However, even if DHS or its components properly invoked a 10-day extension, that date – at the latest, July 21, 2017 for DHS – has long since passed.

50.     To date, DHS and its components, CBP, ICE, TSA, USCIS, and FEMA, have failed to make the required determination and notifications.

*Plaintiff's FOIA Request to DOJ regarding Hillary Clinton*

51.     On February 15, 2017, Plaintiff sent a FOIA request to DOJ seeking the following records:

1)      All formal and informal documents, including but not limited to email communications and memoranda, to, from, or between employees of the Office of Attorney General, Office of the Deputy Attorney General, and Office of the Associate Attorney General and any agent of Donald J. Trump or of the transition team of President-Elect Donald J. Trump (including but not limited to Reince Priebus, Stephen Bannon, Steven Miller, Jared Kushner, Don McGahn, Mike Pence, and Rudolf Giuliani) concerning Hillary Clinton.  The timeframe of this request is November 9, 2016 through January 20 2017.

2)      All formal and informal documents, including but not limited to email communications and memoranda, between employees of the Office of Attorney General, Office of the Deputy Attorney General, and Office of the Associate Attorney General and the Executive Office of the President (including the White House Office and the Office of Management and Budget) concerning Hillary Clinton.  The timeframe of this request is January 20, 2017 through the date of this request.

*See* Exhibit Q (FOIA Request No. 2 to DOJ).

52.      Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See*

*id*.

53.      In a letter dated March 24, 2017, DOJ acknowledged receipt of Plaintiff's FOIA

request on February 27, 2017.  *See* Exhibit R (DOJ Acknowledgment of FOIA Request No. 2).

54.      Defendant DOJ stated that its response would likely require consultation with

another agency, thus falling under the "unusual circumstances" regulation.  Defendant did not

provide an estimated completion date for the request.  Also, Defendant had "not yet made a

decision on [the] request for a fee waiver."  *See id.*

55.      On November 20, 2017, Plaintiff sent an updated FOIA request to DOJ, seeking

substantially the same information from OAG, ODAG, the Office of the Associate Attorney

General (OAAG), the Office of Legislative Affairs (OLA), and the FBI:

1)      All formal and informal documents, including but not limited to email communications and memoranda, to, from, between, or including staff of the Department of Justice concerning Hillary Clinton.

2)      All formal and informal documents, including but not limited to email communications and memoranda, to, from, or between employees of the Department of Justice and Executive Office of the President including but not limited to John F. Kelly, Kirstjen Nielsen, Reince Priebus, Stephen Miller, Steve Bannon, Jared Kushner, Don McGahn, and Mike Pence concerning Hillary Clinton.

3)      All formal and informal documents, including but not limited to email communications and memoranda, to, from, or between employees of the Department of Justice and the Office of Management and Budget

concerning Hillary Clinton.

4)      In addition to the records requested above, we also request records
        describing the processing of this request, including records sufficient to
        identify search terms used and locations and custodians searched, and any
        tracking sheets used to track the processing of this request.  If your agency
        uses FOIA questionnaires or certifications completed by individual
        custodians or components to determine whether they possess responsive
        materials or to describe how they conducted searches, we also request any
        such records prepared in connection with the processing of this request.

The timeframe for this request is January 20, 2017 through the date that searches
are conducted for records responsive to this FOIA request.

*See* Exhibit S (FOIA Request No. 3 to DOJ).

56.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and §

552(a)(4)(A)(ii)(II).  *See id*.

57.     On December 19, 2017, OIP wrote to Plaintiff to acknowledge receipt of the

November 20, 2017 FOIA request on that day on behalf of OAG, ODAG, OAAG, and OLA.

*See* Exhibit T (DOJ Acknowledgment of FOIA Request No. 3).

58.     In its acknowledgement, DOJ stated that the FOIA request fell under the "unusual

circumstances" regulation.  Defendant did not provide an estimated completion date for the

request.  Also, Defendant had "not yet made a decision on [the] request for a fee waiver."  *See id.*

59.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's requests, DOJ

was required to "determine . . . whether to comply with such request" and to "immediately

notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek

assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse

determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).  Even if DOJ or its

components properly invoked a 10-day extension, that time has expired for both the first and

second FOIA requests to DOJ.

60.     To date, Defendants have failed to make the required determination and notifications.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

61.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

62.     Defendants are in violation of FOIA by failing to respond to Plaintiff's request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)     Order Defendants, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(2)     Order Defendants, by a date certain, to demonstrate that each has conducted an adequate search;

(3)     Order Defendants, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4)     Enjoin Defendants from improperly withholding records responsive to Plaintiff's request;

(5)     Order Defendants to grant Plaintiff's request for a fee waiver;

(6)     Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E);

(7)     Grant Plaintiff such other relief as the Court deems appropriate.

Date: February 26, 2018

*/s/ Allison F. Murphy*
ALLISON F. MURPHY (D.C. Bar No. 975494)
Counsel, The Protect Democracy Project, Inc.
2020 Pennsylvania Ave., NW #163
Washington, DC 20006
Phone: 202-599-0466
Fax: 929-777-8428

*Counsel for Plaintiff*